**UNITED STATES ex rel. GREENBERG v. PULVER, Marshal.**[*]

**Cr. 2798, 2799.**

District Court, E. D. New York.
March 9, 1932.

[*]Orders affirmed 61 F.(2d) 1044.

Phillip F. Seigenfeld and Harold L. Turk, both of Brooklyn, N. Y., for relator.

Howard W. Ameli, U. S. Atty. and Emanuel Bublick, Asst. U. S. Atty., both of Brooklyn, N. Y., for respondent.

CAMPBELL, District Judge.

This is a hearing on a writ of habeas corpus aided by a writ of certiorari.

The relator after a hearing was remanded by a United States commissioner of this district to the custody of the United States marshal of this district to await the order of a judge of this district directing the removal of the relator to the first division of the district of Kansas.

■ The better practice is to wait until an order of removal has been granted by the judge, and for the relator then to sue out the writ of habeas corpus, but, in this instance, the relator, having applied for the writ immediately after the commissioner had committed him to await the judge's order of removal, the resistance on the part of the government to the relator's discharge will be considered equivalent to a motion for a warrant for the removal of the accused to the other district, which the District Judge alone is authorized to issue, under section 1014 of the Revised Statutes, now title 18, section 591, U. S. Code (18 USCA § 591). United States v. Power (C. C. A.) 279 F. 735.

In April, 1930, the grand jury in the First Division of the District of Kansas found and presented an indictment charging a conspiracy to violate the laws of the United States, and named in said indictment as one of the defendants one "J. B. Greenberg, whose Christian name is to the Grand Jury unknown, alias Edward Jaybee."

■ No question appears to have been raised before the commissioner as to probable cause, and none was raised before this court on the argument on the writ; therefore probable cause is shown by the indictment, a copy of which is in evidence.

The sole question raised is that of the identity of the relator with the person indicted.

The government contends that the relator is the person whom the grand jury of the First Division of the District of Kansas indicted in the said indictment under the name of "J. B. Greenberg, whose Christian name is to the Grand Jury unknown, alias Edward Jaybee."

This is challenged by the relator, who tendered the issue of identity both before the commissioner and before this court upon the hearing of the writ.

■ The burden rests upon the government to clearly and satisfactorily establish the identity of the relator as the defendant indicted by the grand jury. In re Burkhardt (D. C.) 33 F. 25, 26; United States ex rel. Povlin v. Hecht (C. C. A.) 48 F.(2d) 90; United States ex rel. Mouquin v. Hecht (C. C. A.) 22 F.(2d) 264, 265.

■ The commissioner saw and heard the witnesses, and his finding of fact, if supported by competent evidence, is not reviewable on this hearing. Rumely v. McCarthy, 250 U. S. 283, 39 S. Ct. 483, 63 L. Ed. 983, affirming (D. C.) 256 F. 565.

■ We are not concerned at this time with the question of who committed the crime, our only concern is whether the relator is the person whom the grand jury meant to indict.

■ The meaning of the grand jury is to be ascertained from the words they used, and in case of doubt it may be found by looking at the circumstances under which they were uttered.

■ These circumstances were the evidence before the grand jury when they found the indictment, and, if doubt arises, they are to be understood as indicating the person described in the testimony.

■ If it be shown that the witnesses in their testimony before the grand jury described the person arrested, he is the person indicted. United States ex rel. Mouquin v. Hecht, supra.

■ It was competent for the government to show the person described by the witnesses to the grand jury. United States ex rel. Mouquin v. Hecht, supra.

In its efforts to make such proof, the government was unduly restrained by some of the commissioner's rulings, which were erroneous.

In the case at bar, it clearly appears on the face of the indictment, particularly in the alleged overt acts Nos. 11, 12, 13, 14, 15, and 16, that the person whom the grand jury meant to, and did, indict was the J. B. Greenberg, whose Christian name was to the grand jury unknown, alias Edward Jaybee, who with Samuel Rubin, Harry J. Mandell, alias Ralph Lewis, alias Charles Harris, under the defendants' trade-name of Pioneer Sales Company, carried on business at the place of

business of the De Luxe Packing Company, at 1129 Myrtle avenue, Brooklyn, N. Y.

If there be sufficient evidence to show that the relator with the others named, or either of them, carried on business during the times alleged in the indictment at the place aforesaid, under the trade-name of Pioneer Sales Company, then the relator is the person whom the said grand jury meant to indict, and an order for his removal should be granted.

The case as presented on behalf of the government was somewhat confusing, and should have been made clearer, but little, if any, confusion will arise if attention be directed to the question of whether the relator was, at the times and places set forth in the said indictment, with the others named or either of them, carrying on business under the trade-name of Pioneer Sales Company.

On the hearing before the commissioner in the first instance, the proceedings were pressed upon a clearly mistaken identification by Martin J. McGoff, a prohibition agent attached to the Department of Justice, of one Charles Tannenbaum, as the person whom the said grand jury meant to indict as J. B. Greenberg, alias Edward Jaybee.

The said Agent McGoff testified before the said grand jury which found and presented the indictment in question, and he made the arrest herein.

On the hearing before the commissioner, Agent McGoff testified that he was acquainted with the said Edward Jaybee by sight, and that he arrested the defendant J. B. Greenberg, alias Edward Jaybee, on a warrant at 983 Fulton street, Brooklyn, N. Y., in J. B. Greenberg's drug store, and the man who signed the bail bond in his presence was the one he arrested, and that man has been clearly shown to be the relator, but the said Agent McGoff, on the hearing before the commissioner, positively identified the said Charles Tannenbaum as such J. B. Greenberg, alias Edward Jaybee, and said that he could not be mistaken; but he was also just as positive that said Charles Tannenbaum was the person arrested by him as Edward Jaybee, which was the only name by which he knew him, and also insisted that said Charles Tannenbaum was the person arrested by him as Edward Jaybee, even after it was called to his attention that the witness Crews, who secured the bond for the relator after his arrest, had testified that the relator, and not Charles Tannenbaum, was the person admitted to bail in the presence of said Agent McGoff.

The evidence clearly shows that the relator, and not Charles Tannenbaum, was the person who was arrested by Agent McGoff.

There is nothing in the record to show what resemblance there was between the relator and said Charles Tannenbaum, but the said Charles Tannenbaum did testify that he had been taken for J. B. Greenberg maybe once or twice, and it is not for me to make any assumption, but the commissioner saw both the relator and Charles Tannenbaum.

David R. Herskowitz, agent for the Department of Justice, the only other witness produced who had testified before the said grand jury, made no personal identification of any one as the person whom the grand jury meant to indict, but he did give evidence as to the place of residence and place of business of the person whom the said grand jury meant to indict.

This brings us to a consideration of the evidence before the commissioner, which the government contends shows the relator to have been the person who with others named carried on business at the place mentioned in the indictment under the trade-name of Pioneer Sales Company.

Two certified copies of certificates of doing business under the assumed names of Pioneer Sales Company and De Luxe Packing Company, respectively, and each purporting to be executed by Edward Jaybee, Samuel Rubin, and Ralph Lewis, dated January 7, 1930, and January 27, 1930, respectively, acknowledged and filed in the county clerk's office of Kings county on the days of their dates, respectively, were offered in evidence.

No witness was called who testified to seeing the relator sign such certificates as Edward Jaybee, but the witness Harry J. Mandell, named as a defendant in said indictment under the name of Harry J. Mandell, alias Ralph Lewis, alias Charles Harris, and likewise described in the aforementioned overt acts in said indictment, together with the relator, as one of those who conducted business under the trade-name of Pioneer Sales Company, testified that he signed the certificate of doing business under the assumed name of Pioneer Sales Company.

He also testified that he was associated with J. B. Greenberg in the Pioneer Sales Company; that said J. B. Greenberg was his partner.

The testimony of this witness that the said J. B. Greenberg was not known as Edward Jaybee was far from being positive, and his later attempt to deny that J. B. Greenberg

was associated with him in the Pioneer Sales Company, and change his testimony so as to say that Mr. Greenberg was his partner and associated with him in the De Luxe Packing Company, I do not believe. The close association of Mandell with the relator is shown by the fact that Mandell said he went with the man named J. B. Greenberg, who was arrested in this case, to the office of Mr. Turk when that man retained Mr. Turk, and the man arrested was the relator.

It is true that the witness Mandell was not required to point out the J. B. Greenberg that he knew because of a claim that it would incriminate or degrade him, but it is also true that Agent Herskowitz testified that the Edward Jaybee that he testified about before said grand jury was an Edward Jaybee of 1084 Broadway, Brooklyn, N. Y., and 1129 Myrtle avenue, Brooklyn, N. Y., and that the said Edward Jaybee, under the name of J. B. Greenberg, had a drug store at Fulton street and St. James place, and resided at 29 Putnam avenue, both in Brooklyn, N. Y., and that the profession of said man was that of a druggist; and that the Edward Jaybee he testified against was the Edward Jaybee whose name appears on the certificates filed in the county clerk's Office of Kings county, for the trade-names of Pioneer Sales Company and De Luxe Packing Company.

The relator was identified by the agent of 29 Putnam avenue and 435 Grand avenue as Mr. Jack Greenberg, a man who had lived at 29 Putnam avenue, and still lived in another apartment on the same property but a different building, 435 Grand avenue, and that the place of business of said person was a drug store at St. James Place and Fulton street, all in Brooklyn.

Agent Herskowitz also testified that on April 7, 1930, he followed a Willys Knight car, license No. 5 K 7113/1930, registered in the name of J. B. Greenberg, 29 Putnam avenue, which he saw loaded with cartons at 1129 Myrtle avenue, to the drug store of J. B. Greenberg, on Fulton street and St. James Place, Brooklyn, and that on the cartons were tickets which bore the names of the Pioneer and De Luxe, with the address 1129 Myrtle avenue; and the witness Charles Lewis testified that the relator owned a Willys Knight automobile at that time.

The evidence clearly shows that the relator is in the retail drug business, with a store at 983 Fulton street, the corner of St. James Place, Brooklyn, and that Agent McGoff arrested the relator at that store.

Certain receipts given to the Railway Express Agency for shipments to Pioneer Sales Company, and some for shipments to the De Luxe Packing Company, bearing the signature of Ed. Jaybee, were received in evidence. No one testified that he had seen the relator sign them.

Two bail bonds given in this district, signed by the relator, were received in evidence, one signed Jack B. Greenberg, and the other Jack B. Greenberg, alias Edward Jaybee.

Of course the signing of the alias by the relator on one bond does not prejudice him, as it was necessary for him to give bond under the names mentioned in the warrant, and the bond was not introduced for that purpose.

The bonds were offered in evidence to establish proved signatures of the relator, and the commissioner in his decision, referring to them, said: "There is the signature on each of the trade name certificates in evidence of the Pioneer Sales Company and De Luxe Packing Company, and the bonds taken on arraignment in this proceeding, and the writing seems to be identical."

This was purely a question of fact, supported by the written evidence, and I find no reason for interfering with this finding; on the contrary, I am convinced that the signatures on the certificates and receipts were written by the same hand as signed the bail bond.

It seems to me to be clearly and satisfactorily shown by the government that the relator is the J. B. Greenberg who, under that name and the alias Edward Jaybee, is meant to be indicted by the said grand jury and described in the said indictment as a defendant, and particularly in the overt acts 11, 12, 13, 14, 15, and 16, as follows: "That during the time aforesaid, and in pursuance of aforesaid conspiracy, and to effect the objects of the same, on or about the ——— at the place of business of the De Luxe Packing Company, at 1129 Myrtle Avenue, Brooklyn, New York, and without the jurisdiction of this court, the defendants J. B. Greenberg, whose Christian name is to the Grand Jury unknown, alias Edward Jaybee, Samuel Rubin, Harry J. Mandell, alias Ralph Lewis, alias Charles Harris, under the defendants' trade name of Pioneer Sales Company, did then and there * * * sell * * *"

The writ of habeas corpus and the writ of certiorari are dismissed, and the relator is remanded to the custody of the United States marshal of this district, for removal to the

First Division of the District of Kansas, and the application for an order for the removal of the relator to the First Division of the District of Kansas is granted, with the privilege to the relator-defendant, if he so elects, to give bail in the sum of $5,000 for his appearance in said division of said district to which removal is directed, that being the amount of bail fixed on the indictment in that district.

Submit written order.